# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

DAVID P. PENK,                           )
                                       )
     Plaintiff,                         )
                                         )
     v.                                 )          10-3237
                                         )
BOARD OF EDUCATION OF                    )
BALL-CHATHAM COMMUNITY                   )
UNIT SCHOOL DISTRICT NO. 5,              )
                                         )
     Defendant.                         )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on Defendant the Board of Education of Ball-Chatham Community Unit School District No. 5's Motion for Summary Judgment (d/e 22).  Defendant's Motion is GRANTED.  Plaintiff has failed to demonstrate a connection between a lower level employee's gender animus and the decision to transfer Plaintiff.  Furthermore, Plaintiff has not demonstrated that Defendant's reason for transferring Plaintiff is pretexual.

# I. FACTUAL BACKGROUND

Plaintiff obtained his Illinois teacher's certification in 1990. Plaintiff has certifications to serve as a counselor or as an administrator, including a superintendent.

From the 2001-2002 school year until the 2007-2008 school year, Plaintiff served as a guidance counselor at Glenwood High School in District No. 5, Chatham, Illinois.  Plaintiff became a tenured faculty member at Glenwood High School in 2005.

On March 18, 2008, District No. 5 Superintendent Robert Gillum decided to seek Plaintiff's transfer from Plaintiff's ten (10) months paid Glenwood High School guidance counselor position to a nine (9) months paid language arts teaching position at Glenwood Middle School.  In March 2008, the Ball-Chatham Board of Education approved Plaintiff's transfer.  Plaintiff argues that he never wanted the transfer and states that Defendant transferred Plaintiff because he is a man.  Plaintiff still serves as a language arts teacher at Glenwood Middle School.

A.    Changes In Guidance Faculty Occurred Prior to the 2007-2008
        School Year

Before the 2007-2008 school year began, the administrator of the

guidance department, Mike Wisniewski, resigned and guidance

department chair, Frank Ramsey, retired.  Todd Graba replaced

Wisniewski and became Plaintiff's immediate supervisor.  Graba reported

to Glenwood High School Principal, Nathaniel Cunningham.

Cheryl Mullen, who had been a counselor at Glenwood High

School since the 2005-2006 school year, replaced Ramsey as the

guidance department chair.  Mullen acted as a liaison between the

department and administration in her capacity as department chair.

However, Mullen had no authority or say in personnel decisions.

Plaintiff alleges that when Mullen and Plaintiff first met, Mullen told

Plaintiff she had no need for men after her experience with her ex-

husband.  Mullen denies saying this to Plaintiff.  See d/e 31 at 38.

After Frank Ramsey retired, Plaintiff became the only male

counselor in the guidance department.  The female guidance counselors

ate lunch in an area known as the hen house.  The parties dispute

whether men were allowed to eat in the hen house.  Further, Plaintiff

claims that the females did not include him in a Christmas gift exchange in 2007.  Defendant disputes this.  Neither party has indicated exactly how many female counselors were in the guidance department during the 2007-2008 school year.

In addition to Plaintiff's allegations about Mullen and the other female counselors, Plaintiff alleges that Kristie A. Zimmermann, a female counselor at Glenwood High School since the 1998-1999 school year, suggested that Plaintiff pursue open employment positions outside of Glenwood High School.  Plaintiff states that Zimmermann made these comments between 2006 and 2008.  Zimmermann states that she had no ill intent when she suggested these opportunities to Plaintiff.

**B.    Plaintiff Complained to Glenwood High School Administrators About Mullen's and Zimmermann's Conduct Even Though He Was Not the Administrator In Charge of the Guidance Department**

On February 22, 2008 Mullen and Zimmermann had an unexcused absence on a school day.  This occurred after Mullen and Zimmermann attended a meeting at the Southern Illinois University School of Nursing, went to lunch, took a longer than usual lunch, and decided to return to Chatham after the lunch.  Mullen and Zimmermann

arrived in Chatham at around 2:30 or 2:45 p.m.  Instead of returning to the school, Mullen and Zimmermann decided to go home without notifying administrators.  Mullen and Zimmermann received "coaching" from their immediate supervisor Todd Graba.  Graba told the women they were not to leave school before the end of the day without permission.

Besides those unexcused absences, Plaintiff alleges that Mullen and Zimmermann acted unprofessionally by speaking about bras, lingerie, and panties in front of Plaintiff.  Zimmermann agrees that the women may have talked about feminine issues in front of Plaintiff and that Zimmermann may have said she thought a celebrity was hot.  See d/e 30 at 20-22.   Mullen, on the other hand, disputes the allegations.  See d/e 31 at 36.  Mullen and Zimmermann agree, however, that an employee in the guidance department, Nichole Inkel-Pongracz, brought "fluffers" into the office and explained how fluffers are used in pornographic films to arouse males.  See d/e 30 at 21; d/e 31 at 36.  Plaintiff never filed a formal harassment complaint.

Further, Plaintiff complained to administrators that Mullen and Zimmermann wore flip-flops, shorts, and jeans to school.  Plaintiff asserts that wearing such apparel violates the school's business casual dress code. Plaintiff further asserts that administrators would not let Plaintiff wear shorts on golf meet days when Plaintiff coached the team during the 2006-2007 school year.  Mullen and Zimmermann deny that they violated the school's dress code.  See d/e 30 at 19; d/e 31 at 34.

In addition to the dress code violations, Plaintiff complained to administrators about Mullen and Zimmermann taking long lunches and coming to school late and leaving school early.  Superintendent Gillum acknowledged that members of the guidance faculty were taking long lunches and that he had stopped the practice.  See d/e 27 at 7.

In response to Plaintiff's complaints about Mullen and Zimmermann to administrators during the 2007-2008 school year, Mullen and Zimmermann told Plaintiff that Plaintiff was not an administrator, and therefore, his job duties did not include enforcing faculty rules and policies.  See d/e 42 at 7.  Mullen also told Plaintiff that reporting co-workers works both ways and that she would report Plaintiff

to Glenwood High School administrators if Plaintiff violated any rules.

See d/e 42 at 9.

## C.   Plaintiff Received a Positive Performance Evaluation Before Tensions In the Guidance Department Reached Their Pinnacle During the 2007-2008 School Year

In March 2007, Defendant performed an evaluation of Plaintiff.

See d/e 38, Ex. 1 at 64-74.  The evaluation judged Plaintiff on

attendance, professionalism, program planning, performance

responsibilities, specialized services, and public relations.  Plaintiff could

receive a rating of unsatisfactory, effective, or excellent as an overall

rating and for each of the categories.  Each category also had a space for

comment.

Plaintiff received an overall evaluation of excellent and excellent

ratings for attendance, program planning, performance responsibilities,

specialized services, and public relations.  However, Plaintiff received an

effective rating for professionalism.  Further, under the professionalism

category, Plaintiff's evaluation states that:

> While Mr. Penk is effective, there are two areas that need to
> be addressed: he needs to work on developing better
> relationships with the faculty, tapping into their expertise,
> listening and becoming more supportive, even if he disagrees

Page 7 of 42

with them.  He also needs to work on his skills in controlling
situations so that conversations don't become
confrontational.

<u>See</u> d/e 38, Ex. 1 at 67.

**D.  Plaintiff Acted Subordinate To His Immediate Supervisor Todd Graba Before Superintendent Gillum Decided To Recommend Plaintiff's Transfer to the Board of Education**

In February 2008, Plaintiff's immediate supervisor, Todd Graba,

asked Plaintiff to provide the number of special education

accommodations that would be required for the second day of the Prairie

States Achievement Examination.  Plaintiff refused to complete this task,

stating instead, "I will not have time to do this.  Cheryl is the department

head."  <u>See</u> d/e 22, Ex. 3 at 36.

Cheryl Mullen completed the task, and Graba sent Mullen an email

thanking her for being professional and helping the team.  Plaintiff had

been copied on the email and responded with his own email to Mullen,

Principal Cunningham, and Graba.  The email said "Nice Jab."  <u>See</u> d/e

22, Ex. 3 at 36.

The disciplinary document that chronicles this incident was

completed by Todd Graba and dated February 4, 2008.  The document

states that Plaintiff was "insubordinate with a repeated act that has been discussed with him before by myself and Mr. Cunningham." <u>See</u> d/e 22, Ex. 3 at 37.  Presumably, "insubordinate with a repeated act" refers to Plaintiff not following directives from superiors.  The document also states that Plaintiff "must comply with directives that do not violate the contract and that [Plaintiff] does not determine what is his work or anyone elses." <u>See</u> d/e 22, Ex. 3 at 37.

### E.     Defendant Provides Affidavits To Support Allegations that Plaintiff Acted Unprofessionally Toward Others At Glenwood High School

Defendant has attached Affidavits from Becky Nieman, the Sangamon Area Special Education District Administrator for Glenwood Middle School and Glenwood High School in 2007-2008; Billie Jarvis-Freeman, English Instructor at Glenwood High School since 2001; Marni Countryman, social worker at Glenwood High School since the 1996-1997 school year; and Brian Spring, a senior at Glenwood High School during the 2005-2006 school year. <u>See</u> d/e 22, Ex. 5.  These Affidavits document Plaintiff's unprofessional behavior toward others while serving as a guidance counselor at Glenwood High School.

Becky Nieman encountered Plaintiff at individual education plan meetings for students with special needs and in parent conferences after issues had arisen between the District and a special education student's parents. <u>See</u> d/e 22, Ex. 5 at 1-2.  Nieman alleges that at a meeting on December 17, 2007, Plaintiff conducted himself unprofessionally in front of a student and parent when Plaintiff, in an argumentative tone and louder voice, "asked the student what he wanted from his education— just being able to pass and get his diploma or did he really want to learn?" <u>See</u> d/e 22, Ex. 5 at 3.  Nieman states that Plaintiff's conduct frustrated the student and upset the mother who "herself . . . had been crying during the meeting." <u>See</u> d/e 22, Ex. 5 at 3.

Further, after the parent had composed herself, Plaintiff "continued in making his comments and made a statement about how [the student] was a man and in a man's world these are the things the student needs to face.  It was at this time that Mrs. Nieman ended the . . . meeting . . . ." <u>See</u> d/e 22, Ex. 5 at 3.  Nieman sent a letter dated December 17, 2007 to Plaintiff's supervisor, Todd Graba, regarding Plaintiff's unprofessional conduct during the meeting. <u>See</u> d/e 22, Ex. 5 at 3-4.  Nieman also told

Graba she would not meet with Plaintiff alone in the future.  <u>See</u> d/e 22, Ex. 5 at 2.

Jarvis-Freeman alleges that in Spring 2006, a student, Brian Spring, arrived at Jarvis-Freeman's advanced placement English class upset by an altercation involving Plaintiff.  <u>See</u> d/e 22, Ex. 5 at 5-6.  Jarvis-Freeman requested a meeting with Kristie Zimmermann, Brian Spring's guidance counselor.  After the meeting with Zimmermann, Jarvis-Freeman alleges that Plaintiff pulled Jarvis-Freeman into Plaintiff's office, closed the door, and said that "'he had every fucking right' to yell or curse at a student because the students curse at them."  <u>See</u> d/e 22, Ex. 5 at 6.  Jarvis-Freeman says that she informed Principal Cunningham of the incident and told Cunningham that in the future she would not meet with Plaintiff alone.  <u>See</u> d/e 22, Ex. 5 at 6.

Brian Spring's Affidavit also describes the incident that prompted the events set forth in Jarvis-Freeman's Affidavit.  Spring states that he had flipped off the driver of a vehicle who had been tailgating Spring. <u>See</u> d/e 22, Ex. 5 at 10-12.  Spring says that the driver followed Spring to a Chatham fast-food restaurant, approached Spring's window in the

parking lot, and proceeded to yell and curse at Spring.  At this time, Spring recognized that the driver was Plaintiff.

Later, at Glenwood High School, Spring says that Plaintiff saw Spring point at Plaintiff.  Plaintiff approached Spring, grabbed him by the collar, asked him if he thought this was funny, and took Spring to Principal Cunningham's office.  Plaintiff told Principal Cunningham that Spring had flipped Plaintiff off.  Cunningham dismissed the event because it had occurred off of school property.  Spring states in his Affidavit that Plaintiff responded by threatening to '"rip [Spring's] fucking head off."'  See d/e 22, Ex. 5 at 12.

Finally, Countryman, the social worker at Glenwood High School, states in her Affidavit that she met with Plaintiff at least twice a week in her role of serving special education students at Glenwood High School. See d/e 22, Ex. 5 at 7-9.  Countryman describes Plaintiff as arrogant toward students and parents and states that she recalls at least ten different occasions when a special education student would not go to Plaintiff without Countryman because the student was afraid that Plaintiff would be mean to or harass the student.  See d/e 22, Ex. 5 at 8.

On one occasion, Plaintiff said in Countryman's presence and to a student, "'[w]hy are you wasting our time?  We both know you won't amount to a piece of shit.'"  <u>See</u> d/e 22, Ex. 5 at 8.

Another time, a student and his parents attended a staffing with Plaintiff and Countryman.  Countryman states that Plaintiff said things so inappropriate that the student "finally lost control, yelled fuck you" at Plaintiff, and left.  <u>See</u> d/e 22, Ex. 5 at 8.  Countryman says that she complained to Principal Cunningham and Plaintiff's supervisor Todd Graba about Plaintiff's conduct.  <u>See</u> d/e 22, Ex. 5 at 9.

Plaintiff contests the facts alleged in the Affidavits, says that some of the incidents never occurred, and states that he does not remember the December 17, 2007 incident that Becky Nieman discusses in her Affidavit and letter to Todd Graba.  <u>See</u> d/e 38 at 32-35.

## F.     In March 2008, Plaintiff Left School to Play Golf Without Notifying Administrators, and In May 2008, Plaintiff Told Kristie Zimmermann that He Planned To File a Lawsuit

On March 20, 2008, two days after Superintendent Gillum had decided to recommend Plaintiff's transfer to the Board of Education, Plaintiff left school without permission.  Plaintiff left to play golf with a

friend and asked Karen Hoffek, Sangamon County Learning Academy Guidance Dean, to say that Hoffek, not Plaintiff, cancelled a meeting the two were supposed to have that afternoon.  See d/e 22, Ex. 2 at 52 (recording of voicemail message left by Plaintiff on Karen Hoffek's phone).

Defendant filed a formal disciplinary report documenting Plaintiff's misconduct.  See d/e 22, Ex. 3 at 39.  The report, dated April 14, 2008, states that Plaintiff abandoned his duties and acted in a deceitful manner.  Defendant docked Plaintiff one-half day's pay and suspended him for two days.

Plaintiff feels that he received excessive punishment compared to Mullen and Zimmermann who only received "coaching" after the women failed to return to school on February 22, 2008.  Plaintiff also notes that Glenwood Middle School language arts teacher Jackie Bartel-Creighton received only two days of docked pay when she called in sick for two days while her boyfriend was home from the military.  Bartel-Creighton received no suspension.  See d/e 29 at 8-9.

Additionally, on May 14, 2008, Defendant filed a disciplinary report after Cheryl Mullen reported Plaintiff for threatening to file a lawsuit against Defendant.  Plaintiff had actually made the comment about the lawsuit to Kristie Zimmermann.  See d/e 42 at 21.  This disciplinary report states that on May 13, 2008, Plaintiff engaged in behavior that made his coworkers feel uncomfortable, was perceived as bullying, and created a hostile work environment.  See d/e 22, Ex. 3 at 43.

On May 29, 2008, Plaintiff filed a rebuttal to the May 13, 2008 incident stating that the events concerned a conversation between Plaintiff and an old friend, Kristie Zimmermann.  Plaintiff also stated in the rebuttal that Zimmermann came into his office willingly and shut the door less than one minute into the conversation.  At no time, says Plaintiff, did Plaintiff prevent Kristie Zimmermann from leaving his office.  See d/e 22, Ex. 3 at 44.

G.    **Defendant Transferred Plaintiff Because His Unprofessional Conduct Toward Others Demonstrated a Need To Place Plaintiff In the More Structured Environment of a Classroom**

Plaintiff's immediate supervisor, Todd Graba, states that he received complaints about Plaintiff, and, that Graba, along with other Glenwood High School faculty, voiced concerns regarding these complaints to Glenwood High School Principal, Nathaniel Cunningham. Cunningham shared these concerns with Superintendent Robert Gillum.

In March 2008, Cunningham and Glenwood Middle School Principal, Jill Larson, discussed Plaintiff's future with Defendant. Cunningham and Larson decided that Plaintiff would be successful in the more structured setting of a classroom at Glenwood Middle School.

On or about March 17, 2008, Cunningham and Larson recommended to Superintendent Gillum that Plaintiff be transferred to a vacant language arts position at Glenwood Middle School.  On March 18, 2008, Gillum determined that a transfer would be appropriate.  On March 20, 2008, Larson and Cunningham called Plaintiff on his cell phone and told Plaintiff about the transfer.

On March 24, 2008, Plaintiff asked Gillum for a meeting regarding the transfer.  On the morning of March 31, 2008, Plaintiff met with Ball-Chatham Education Association representative, Sean Burns; Illinois Education Association representative, Jerry Harrison; the District's Human Resources Director, Michelle Bulinski; and Gillum, Cunningham, and Graba.  Superintendent Gillum told Plaintiff that Plaintiff could agree to the transfer or work another year as a counselor at Glenwood High School and resign.  See d/e 42 at 13.  Gillum also told Plaintiff that Plaintiff would receive a positive recommendation only if Plaintiff agreed to the transfer.  See d/e 42 at 13.  After hearing Superintendent Gillum's offers, Plaintiff agreed to the transfer.  See d/e 22, Ex. 3 at 38.

On March 31, 2008, at Gillum's recommendation, the Board approved Plaintiff's transfer.  Afterward, Glenwood Middle School Principal Jill Larson told Plaintiff that the transfer was never about discipline.  See d/e 42 at 17.

Plaintiff contends that Principal Larson's comments support his argument that the transfer occurred because Plaintiff is a man. Defendant, in contrast, asserts that the transfer to a classroom setting

gave Plaintiff more structure so he could avoid additional negative confrontations with students, parents, faculty, and administrators.

## H.  Plaintiff Attempted To Rescind His Agreement To the Transfer and Has Applied For Two Guidance Counselor Openings at Glenwood High School Since His Transfer

Plaintiff tried to rescind his agreement to the transfer by writing to and appearing before the Ball-Chatham Board of Education in a meeting on May 18, 2008.  See d/e 22, Ex. 2 at 53 (recording of executive session before Ball-Chatham Board of Education).  At the meeting, Board members discussed Plaintiff's complaints about his female co-workers including the long lunches Plaintiff says Mullen and Zimmermann took.

Superintendent Gillum also spoke to the Board about the formal disciplinary action taken by Defendant after Plaintiff left school on March 20, 2008 without permission.  Gillum played the voicemail message from March 20, 2008 where Plaintiff asked Karen Hoffek to tell anyone who asks that Hoffek, not Plaintiff, wanted to cancel their meeting that day.  After hearing this message, the Board decided it would not act on Plaintiff's request to rescind his agreement to the transfer.

Plaintiff has since applied for two guidance counselor openings at Glenwood High School in 2008 and 2011 respectively.  In 2008, Lora Hoffmann was hired to replace Plaintiff.  In 2011, Defendant hired another female guidance counselor, Janna Cooper.

## II.  <u>PROCEDURAL BACKGROUND</u>

On January 13, 2009, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission, Chicago District Office.  <u>See</u> d/e 1 at ¶ 3.  On June 16, 2010 the Commission sent a letter of dismissal and notified Plaintiff of his right to sue within 90 days.  <u>See</u> d/e 1 at ¶ 4.

On September 15, 2010, Plaintiff filed his Complaint claiming that Defendant discriminated against Plaintiff based on his gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, <u>et</u> <u>seq</u>. (Title VII).  <u>See</u> d/e 1.  Defendant filed the instant Motion for Summary Judgment on April 20, 2012.

## III.  <u>JURISDICTION AND VENUE</u>

Plaintiff alleges gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, <u>et</u> <u>seq</u>.  Federal courts have

subject matter jurisdiction over cases like Plaintiff's that are brought pursuant to federal statute.  See 28 U.S.C. § 1331.

Further, the actions giving rise to Plaintiff's Complaint occurred in this judicial district.  Therefore, venue is proper in the Central District of Illinois, Springfield Division.  See 28 U.S.C. § 1391(b).

## IV.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).  This requires the moving party to show that no "reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-54, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997).  At this stage, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  Trentadue v. Redmon, 619 F.3d

648, 652 (7th Cir. 2010).  The nonmoving party, however, must also provide evidence in opposition to the motion.  Specifically, "to oppose a motion for summary judgment, the nonmoving party . . . must do more than raise a metaphysical doubt as to the material facts.  Rather, [that party] must come forward with specific facts showing that there is a genuine issue for trial." Gleason, 118 F.3d at 1139 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citations and internal quotation marks omitted)).  A genuine issue of material fact exists if sufficient evidence favoring the nonmoving party would permit a jury to return a verdict for that party.  Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).

## V.   ANALYSIS

Plaintiff claims that Defendant transferred Plaintiff from his guidance counselor position at Glenwood High School to his current position as a language arts teacher at Glenwood Middle School because Plaintiff is a man.  Plaintiff asserts that this adverse employment action violated Title VII of the Civil Rights Act of 1964.

Defendant has moved for summary judgment on Plaintiff's claim arguing that Plaintiff cannot demonstrate a genuine issue of material fact for trial. To overcome this Motion for Summary Judgment, Plaintiff may demonstrate a genuine issue of fact for trial using the direct or indirect methods of proof. Plaintiff has attempted to establish a genuine issue of fact using both methods of proof.

## A.   Plaintiff Has Not Shown a Link Between a Non-Decisionmaker's Gender Bias and the Decision To Transfer Plaintiff

Plaintiff first alleges that a gender division in the guidance department influenced the ultimate decision to recommend Plaintiff's transfer to the language arts position at Glenwood Middle School. To support his allegation of a gender division, Plaintiff notes that when he first met Cheryl Mullen, the guidance department chair during the 2007-2008 school year and Glenwood High School counselor since the 2005-2006 school year, she said she has no use for men because of her experience with her ex-husband. Mullen denies making this statement.

As the guidance department chair, Mullen served as a liaison to Glenwood High School's administrators including Todd Graba. Graba

was the immediate supervisor to all of the guidance counselors and reported to Principal Nathaniel Cunningham.

In light of tensions that had grown within the guidance department throughout the 2007-2008 school year, Graba asked Mullen to create an agenda for the March 10, 2008 guidance department meeting. Mullen created an agenda that chronicled Plaintiff's unprofessional conduct toward others in the department.

Plaintiff contends that the gender divide grew during the 2007-2008 school year because Plaintiff wanted to enforce rules and that Plaintiff's assertiveness angered Mullen, Graba, and a long-time guidance counselor, Kristie Zimmermann. Plaintiff further claims that the gender divide led Graba, Mullen, and Zimmermann to determine that Plaintiff, the lone male, needed to go.

Also in March 2008, Graba and Principal Cunningham discussed the heightened tensions within the guidance department. Subsequently, Principal Cunningham spoke with Glenwood Middle School Principal Jill Larson about Plaintiff being moved to a language arts position at the Middle School. Larson wanted Plaintiff to fill the position.

Once Larson had agreed to the transfer, Principal Cunningham recommended Plaintiff's transfer to Superintendent Gillum. Cunningham made this recommendation on March 17, 2008, and a day later, Superintendent Gillum decided to put the transfer recommendation on the Board of Education's agenda for the March 31, 2008 meeting.

On the morning of March 31, 2008, Gillum gave Plaintiff the choice between accepting the transfer or working another year as a guidance counselor and resigning. Gillum also told Plaintiff that Plaintiff would receive a favorable recommendation only if Plaintiff agreed to the transfer. Reluctantly, Plaintiff agreed and the Board of Education approved the transfer during the Board's March 31, 2008 meeting.

Plaintiff asserts that this series of events and interactions with his co-workers and supervisors leading up to and during the 2007-2008 school year exemplifies how gender animus in the guidance department influenced the final decision to transfer Plaintiff. This influence from Defendant's lower level employees, Plaintiff contends, is sufficient to

demonstrate a genuine issue of fact for trial under the direct method of proof.

With this argument, Plaintiff is attempting to demonstrate a genuine issue of material fact under the direct method of proof by alleging that a lower level employee, who did not have decisionmaking authority, influenced but did not make the ultimate employment decision to transfer Plaintiff.  See Staub v. Proctor Hospital, 131 S.Ct. 1186, 1189 (2011).  To succeed, Plaintiff must establish that a biased subordinate actually harbored discriminatory animus against Plaintiff. Plaintiff must also provide evidence that the biased subordinate's scheme was the proximate cause of the decision to transfer Plaintiff.  Johnson v. Koppers, Inc., ---F.3d --- , 2013 WL 4022294, at *3 (7th Cir. 2013).

Here, Plaintiff has alleged that a gender division in the guidance department led to his transfer.  However, Plaintiff does not explain which of Defendant's employees, whether Cheryl Mullen, Kristie Zimmermann, Todd Graba, Principal Cunningham, or Robert Gillum, was motivated by gender animus and actually influenced the decision to transfer Plaintiff to Glenwood Middle School.  Without alleging a causal chain between the

gender animus of a lower level employee and the final decision to transfer
Plaintiff, Plaintiff has not demonstrated that gender played any role in
the decision to transfer Plaintiff.

B.  **Plaintiff Has Not Shown that Defendant's Proffered Reason For
Plaintiff's Transfer Is Pretextual**

Plaintiff also believes that he can establish a genuine issue of
material fact on his claim of gender discrimination using the indirect
method of proof.  To avoid summary judgment, a plaintiff using the
indirect method of proof must first establish a prima facie case of
discrimination.  Farr v. St. Francis Hosp. & Health Ctrs., 570 F.3d 829,
833 (7th Cir. 2009).  In the male gender discrimination context, a prima
facie case requires the plaintiff to establish background circumstances
demonstrating that a particular employer has reason or inclination to
discriminate invidiously against men or evidence that there is something
curious about the facts at hand; that he suffered an adverse employment
action; that he was meeting the defendant's legitimate performance
expectations; and that another similarly situated male was treated more
favorably than the plaintiff.  Id.  If the male plaintiff can establish a
prima facie case of discrimination, he must then set forth evidence that

creates a genuine issue of material fact regarding whether the legitimate, nondiscriminatory reason offered by the defendant for the adverse employment action is pretextual.  Id. (finding no evidence of gender discrimination where male employee admitted to visiting improper websites and provided no evidence to refute the defendant's assertion that it had fired the plaintiff because he had visited the websites).

In this case, Defendant argues that Plaintiff has failed to establish a prima facie case of gender discrimination.  Further, Defendant contends that even if Plaintiff could establish his prima facie case, that Defendant transferred Plaintiff not because of his gender, but instead, because of his unprofessional conduct toward Glenwood High School faculty, administrators, students, and parents.  Defendant also contends that Plaintiff has not provided evidence that creates a genuine issue of fact as to whether Defendant's legitimate, nondiscriminatory reason for Plaintiff's transfer is pretextual.

Assuming, arguendo, that Plaintiff could establish a prima facie case of gender discrimination, he still must establish a genuine issue of fact regarding whether the reason given for Plaintiff's transfer is pretextual.

Plaintiff may establish pretext by identifying weaknesses, implausibilities, inconsistencies, or contradictions in Defendant's reason for transferring Plaintiff.  Coleman v. Donahoe, 667 F.3d 835, 852-53 (7th Cir. 2012).  If Defendant transferred Plaintiff because Defendant honestly believed Plaintiff acted unprofessionally towards others, even if this reason was foolish, trivial, or baseless, Plaintiff loses.  Id.  On the other hand, if the stated reason, even if actually present in the mind of the employer, was not what induced the employer to take the adverse employment action, the reason is a pretext.  Id.

### 1.   Plaintiff's Positive Performance Evaluation From the 2006-2007 School Year Does Not Undermine the Honesty of Defendant's Reason For Transferring Plaintiff

To demonstrate that pretext, Plaintiff first relies on his performance evaluation from the 2006-2007 school year.  See d/e 38, Ex. 1 at 64-75.  The evaluation, completed in March 2007, has rating levels for excellent, effective, or unsatisfactory performance.  Based on these rating levels, Defendant rated Plaintiff as excellent overall and excellent in the categories of attendance, program planning, performance responsibilities, specialized services, and public relations.  Plaintiff received an adequate

rating under the professionalism category.  Plaintiff argues that this evaluation contradicts the unprofessional interactions with parents, students, faculty, and administrators that Defendant says led to Plaintiff's transfer.

However, a close reading of the March 2007 evaluation shows that Defendant's reason for the transfer is consistent with that evaluation. Specifically, each ratable category contains a portion for comment. Under the professionalism category, Plaintiff's evaluation states that Plaintiff must develop better relationships with faculty and work on controlling situations so that conversations do not become confrontational.  See d/e 38, Ex. 1 at 67.  This comment, that critiques Plaintiff's ability to interact with others, squares with the allegations from Glenwood High School faculty and administrators who have stated Plaintiff acted unprofessionally toward faculty, administrators, students, and parents.

Moreover, positive evaluations are more helpful to a plaintiff's charge of gender discrimination if the evaluation is completed close in time to the adverse employment action.  See Dear v. Shinseki, 578 F.3d

605, 610 (7th Cir. 2009) (disregarding positive evaluations that predated demotion by six months because they did not show that the plaintiff was performing adequately "at the time" of the adverse employment action). Further, the evaluation is more valuable to a plaintiff if no intervening events occurred that are contrary to the positive evaluation. See Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 545-46 (7th Cir. 2002) (disregarding performance award that the plaintiff received two months before discharge because he later violated workplace rules).

Here, Defendant completed the evaluation of Plaintiff in March 2007. However, the tensions that led to Plaintiff's transfer did not reach their pinnacle until the Fall of 2007. At that time, Todd Graba became the guidance department supervisor and Cheryl Mullen the department chair.

After these faculty changes, and at the beginning of the 2007-2008 school year, Plaintiff told Mullen and Kristie Zimmermann that he would report to Principal Cunningham any school rule and policy infractions he saw Mullen and Zimmermann commit. Plaintiff followed through with this threat, reporting Mullen's and Zimmermann's alleged long lunches

and inappropriate dress to Graba and Cunningham.  Plaintiff took it upon himself to oversee and report Mullen's and Zimmermann's alleged misconduct even though he was not the supervisor of the guidance department or an administrator at Glenwood High School.

During the 2007-2008 school year, Plaintiff also acted insubordinate to his immediate supervisor Todd Graba.  The insubordinate conduct involved Graba asking Plaintiff to report student numbers for Prairie States Achievement testing.  Instead of completing the task, Plaintiff told Graba that Cheryl Mullen should report the numbers because Mullen was the department chair.  When Mullen completed the task, Graba sent Mullen an email thanking her for the work.  Plaintiff, who had been copied on the email, replied to Graba, Principal Cunningham, and Mullen stating, "Nice jab."

Without question, Plaintiff's conduct and demeanor caused tension in the Glenwood High School guidance department.  Furthermore, the brunt of Plaintiff's conduct that caused tension between Plaintiff and Graba, Mullen, and Zimmermann occurred during the 2007-2008 school year, after Defendant had completed Plaintiff's performance evaluation

in March 2007.  This new information from the 2007-2008 school year supports Defendant's legitimate reason for Plaintiff's transfer and renders the positive evaluation less reflective of Plaintiff's performance at the time Defendant made the transfer decision.  Accordingly, Plaintiff's positive evaluation from March 2007 does not cast any doubt on Defendant's reason for transferring Plaintiff.

### 2. Defendant Submitted Four Affidavits that Further Support Defendant's Assertion that Plaintiff Acted Unprofessionally Toward Students, Parents, Faculty, and Administrators

Further supporting Defendant's claims of Plaintiff's unprofessionalism are four Affidavits that set forth certain instances of Plaintiffs unprofessional conduct.  One Affidavit from Brian Spring, a senior during the 2005-2006 school year, describes an occasion where Spring was driving and flipped another driver off.  The other driver happened to be Plaintiff.  Plaintiff followed Spring to a fast food restaurant in Chatham, Illinois and yelled at Spring.

Later, at school, Spring claims that Plaintiff took Spring to Principal Cunningham's office.  When Principal Cunningham told Plaintiff that nothing could be done about Spring's actions because the

conduct occurred off of school grounds, Plaintiff allegedly told Spring that Plaintiff would '"rip [Spring's] fucking head off.'"  See d/e 22, Ex. 5 at 12.

An English teacher at the time, Billie Jarvis-Freeman, filed an Affidavit concerning Plaintiff's conduct toward Spring.  In her Affidavit, Jarvis-Freeman states that after the incident with Spring, Plaintiff pulled Jarvis-Freeman into his office and said '"he had every fucking right' to yell or curse at a student because the students curse at them."  See d/e 22, Ex. 5 at 6.

Plaintiff's unprofessional conduct toward students is also reflected in Glenwood High School social worker Marni Countryman's Affidavit.  See d/e 22, Ex. 5.  Countryman alleges that, while working with a student, Plaintiff said to the student '"Why are you wasting your time?  We both know you won't amount to a piece of shit.'"  See d/e 22, Ex. 5 at 8.  Another time, Plaintiff frustrated a student so much that the student said "fuck you" to Plaintiff and left school.  See d/e 22, Ex. 5 at 8.

The final Affidavit, submitted by the Sangamon Area Special Education District Administrator for Glenwood High School, Becky Nieman, chronicles an incident during a December 17, 2007 meeting between a special education student, the student's parent, Plaintiff, and Neiman.  During the meeting, Plaintiff's unprofessional conduct and remarks frustrated the student and made the parent cry.  See d/e 22, Ex. 5, at 1-4.  Nieman finally stopped the meeting because Plaintiff would not refrain from making unprofessional remarks.  Nieman documented this incident in a letter dated December 17, 2007 and sent the letter to Todd Graba.  See d/e 22 Ex. 5, at 3-4.

Plaintiff denies the conduct alleged in these Affidavits.  He also denies any recollection of the December 17, 2007 meeting in Nieman's Affidavit.

Denying the allegations in these Affidavits may raise an issue of fact regarding whether Plaintiff was meeting Defendant's legitimate performance standards.  See, e.g., Pugh v. City of Attica, Indiana, 259 F.3d 619, 627 (7th Cir. 2001).  However, Plaintiff's denials are devoid of any evidence that Defendant did not honestly believe that Plaintiff had

these negative interactions with faculty, administrators, students, and parents.  See id. (stating that the plaintiff's denial that he had misappropriated funds did nothing to cast doubt on the honesty of the defendant's belief that the plaintiff had engaged in such conduct). Therefore, Plaintiff's categorical denials of the facts in the Affidavits do not raise a genuine issue of fact regarding whether Defendant's reason for Plaintiff's transfer is pretextual.

### 3. The Decision To Transfer Plaintiff Instead of Cheryl Mullen Does Not Cast Doubt On Defendant's Reason For Plaintiff's Transfer

Additionally, Plaintiff asserts that Defendant could have alleviated tensions in the guidance department by transferring Cheryl Mullen instead of Plaintiff.  Plaintiff contends that the decision to transfer the lone male, Plaintiff, instead of an assertive female, Cheryl Mullen, further supports Plaintiff's argument that Defendant has provided a pretextual reason for Plaintiff's transfer.

Plaintiff's claim that Defendant could have transferred Mullen instead of Plaintiff, however, has no merit.  Plaintiff has attached exhibits from the Illinois State Board of Education's website that list Plaintiff's

and Mullen's educational certifications.  Plaintiff has an endorsement for Junior High Language Arts.  See d/e 38, Ex. 1 at 48.  Mullen does not.  See d/e 38, Ex. 1 at 44-45.  Without a Junior High Language Arts endorsement, Mullen was unqualified to teach Junior High Language Arts.  Additionally, Plaintiff has not alleged that Mullen was qualified for another open position in the Ball-Chatham School District for the 2008-2009 school year.

### 4.    Plaintiff's Assertion that Defendant Failed To Transfer Other Female Counselors Does Not Cast Doubt On Defendant's Reason For Transferring Plaintiff

Plaintiff adds that Sandy Marcotte and Bridget Bedore, two female guidance counselors, had less seniority than Plaintiff and endorsements to teach junior high language arts.  See d/e 38, Ex. 1 at 24, 43.  Plaintiff asserts that, despite Sandy Marcotte and Bridget Bedore having less experience than Plaintiff and the proper certifications to teach middle school language arts, Defendant did not transfer one of these women to the language arts position at Glenwood Middle School.

Plaintiff, however, has not argued that female counselors Sandy Marcotte or Bridget Bedore were a part of or exacerbated the negative

environment in the guidance department.  Instead, Plaintiff focuses his

attention on Mullen's and Zimmermann's alleged misconduct and Todd

Graba's supposed substandard leadership.  Plaintiff's argument that

either Sandy Marcotte or Bridget Bedore should have been transferred

makes little sense since Plaintiff has not alleged that either woman had

workplace issues, like Plaintiff's, that would warrant a transfer.

### 5.   Defendant's Decision To Hire Female Guidance Counselors In 2008 and 2011 Does Not Cast Doubt On Defendant's Reason For Transferring Plaintiff

Plaintiff also states that, even though he applied in 2008 and 2011

for a counselor position in the Glenwood High School guidance

department, Defendant hired females Lora Hoffmann in 2008 and Janna

Cooper in 2011.  Both women had less counseling experience than

Plaintiff.  Plaintiff claims that Defendant's practice of hiring less

experienced females also supports his argument that Defendant

transferred Plaintiff because he is a man.

However, Plaintiff applied for these positions after the incident on

March 20, 2008 when Plaintiff left school to play golf without

permission.  Later, Plaintiff asked Karen Hoffek, Sangamon County

Learning Academy Guidance Dean, to say that Hoffek, not Plaintiff,

cancelled a meeting the two were supposed to have on the afternoon of

March 20, 2008.  <u>See</u> d/e 22, Ex. 2 at 52.  Defendant filed a disciplinary

report documenting this incident.  The report states that Plaintiff

abandoned his duties as a counselor and acted in a deceitful manner.  <u>See</u>

d/e 22, Ex. 3 at 39.

Plaintiff's abandonment of his duties and his subsequent efforts to

cover-up the incident justified Defendant's decisions in 2008 and 2011

not to re-hire Plaintiff as a Glenwood High School guidance counselor.

Moreover, Plaintiff has not stated whether any other males, besides

Plaintiff, applied for the Glenwood High School guidance counselor

positions in 2008 and 2011.  Without this information, Plaintiff has

failed to establish that Defendant has any propensity to favor females in

hiring processes.

### 6. Plaintiff's Assertion that He Was Punished More Harshly than Females For His Misconduct Does Not Cast Doubt on Defendant's Reason For Transferring Plaintiff

In addition, Plaintiff makes much of Defendant's decision to dock

Plaintiff one-half day's pay and suspend Plaintiff for two days after

Plaintiff left school without permission to play golf on March 20, 2008. Plaintiff feels he received excessive punishment compared to Mullen and Zimmermann who received "coaching" after the women failed to return to school on February 22, 2008.  Plaintiff also notes that Glenwood Middle School language arts teacher Jackie Bartel-Creighton received two days of docked pay when she called in sick for two days while her boyfriend was home from the military.  Bartel-Creighton received no suspension.

But Defendant responds that Bartel-Creighton's, Mullen's, and Zimmermann's conduct differs from Plaintiff's conduct in one important respect.  Plaintiff made a phone call to a third-party, Karen Hoffek, and asked Ms. Hoffek to lie for Plaintiff.  Bartel-Creighton, Mullen, and Zimmermann, on the other hand, did not ask a third-party to cover-up their misconduct.  Plaintiff's attempt to deceive Glenwood High School administrators renders his conduct more reprehensible than Bartel-Creighton's, Mullen's, or Zimmermann's behavior.

7.   **Plaintiff's Allegations that Defendant Treated Females Better than Plaintiff Do Not Undermine the Honesty of Defendant's Reason For Transferring Plaintiff**

Plaintiff also notes that Defendant hired retired guidance counselor, Norm Smith, to provide one-on-one orientation/training to female counselors Bridget Bedore and Cheryl Mullen.  Plaintiff asserts that he, in contrast, did not receive this type of training.  In addition, Plaintiff contends that he was required to complete Prairie States Achievement Examination enrollments and attend College Night, Financial Aid Night, and Eighth Grade Orientation.  Plaintiff states that Cheryl Mullen and Kristie Zimmermann were not required to do any of these tasks.

These allegations of disparate treatment, however, do not cast doubt on Defendant's assertion that Plaintiff acted unprofessionally toward others at Glenwood High School.  Therefore, Plaintiff's claims that he had no mentor and attended more extracurricular events than Mullen and Zimmermann do not raise a genuine issue of fact regarding whether Defendant's reason for Plaintiff's transfer is pretextual.

In sum, Plaintiff has shown that he was a part of, if not the source of, tensions in the Glenwood High School guidance department. His demeanor and unprofessional conduct toward others prompted a male, Principal Nathaniel Cunningham, to recommend Plaintiff's transfer to a language arts position at Glenwood Middle School. Superintendent Robert Gillum, also a male, supported this recommendation. Thereafter, Superintendent Gillum presented the recommendation to transfer Plaintiff to the Board of Education. The transfer was approved by the Board on March 31, 2008.

The evidence set forth by Plaintiff demonstrates a tense office environment at the Glenwood High School during the 2007-2008 school year. The evidence does not, however, raise a genuine issue of fact as to whether Defendant's reason for transferring Plaintiff is pretextual.

## VI.   <u>CONCLUSION</u>

Plaintiff has not demonstrated that a lower level employee motivated by gender animus influenced the transfer decision. Plaintiff has also failed to provide evidence that casts doubt on Defendant's

reason for the transfer decision.  Therefore, Defendant's Motion for

Summary Judgment (d/e 22) is GRANTED.  THIS CASE IS CLOSED.

IT IS SO ORDERED.

ENTER:  September 6, 2013

FOR THE COURT:                    s/ Sue E. Myerscough
                                  SUE E. MYERSCOUGH
                                  UNITED STATES DISTRICT JUDGE